# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Case No. 07-cv-00249-REB-PAC

TAX SERVICES OF AMERICA, INC.,

    Plaintiff,

v.

LINDA MITCHELL,
HAMIDOU DIARRA, and
KERRY DYLES,

    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is **Plaintiff's Motion for Summary Judgment** [#139], filed June 16, 2008. I grant the motion, but require plaintiff to amend its request for compensatory damages to exclude amounts attributable to prejudgment interest.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A movant who bears the burden of proof at trial must submit evidence to establish every essential element of its claim. *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

### III. ANALYSIS

In September, 2003, plaintiff purchased Qwik Tax Service, LLC ("Qwik Tax"), a tax preparation business located in Aurora, Colorado, from defendant Linda Mitchell. In connection with the sale of the business, Mitchell and defendant Hamidou Diarra executed a Purchase and Sale Agreement ("PSA"), which contained, *inter alia*, a non-compete clause preventing defendants from working for any other tax preparation company within 50 miles of Qwik Tax's Aurora office while they were employed by plaintiff and for three years thereafter. Following the sale, plaintiff hired Mitchell and

defendant Hamidou Diarra as the principal tax preparers for Qwik Tax. In 2006, both defendants signed employment agreements restricting them from providing income tax preparation services for another employer within a five mile radius of Qwik Tax's Aurora office during the term of employment and for two years thereafter. The employment agreements specifically noted that the covenants were given in consideration of defendants' access to confidential customer information, such as customer lists and customer tax returns. Plaintiff treats all such information as a trade secret and has taken extensive measures to maintain its confidentiality. Moreover, both defendants acknowledged that the information was a trade secret when they signed their employment agreements. ***See Gold Messenger, Inc. v. McGuay***, 937 P.2d 907, 911-12 (Colo. App. 1997) (terms of agreement recognized nature of subject matter as a trade secret)

In January, 2007, defendant Kerry Dyles opened an office of Kwik Tax Service ("Kwik Tax") within 135 feet of Qwik Tax's Aurora office. Mitchell and Diarra were the two principal tax preparers for Kwik Tax's Aurora office, and between them prepared at least 247 tax returns in the three weeks between the date the Kwik Tax office opened on the date a temporary restraining order was entered in this case. At least two-thirds of those returns were prepared on behalf of former Qwik Tax customers. Qwik Tax's revenues dropped precipitously, while Kwik Tax's revenues increased exponentially during that same period.

Plaintiff now moves for summary judgment against Mitchell and Diarra on its

breach of contract and indemnification claims.[1]  Neither defendant has filed a timely response to the motion.  Although such failure does not entitle plaintiff to a "default" summary judgment, *see **Murray v. City of Tahlequah, Oklahoma***, 312 F.3d 1196, 1200 (10th Cir. 2002), I find that the uncontroverted facts proved up by plaintiff entitle it to summary judgment as to these claims.

Both the PSA and the two employment agreements contain choice of law provisions specifying that they are to be construed in accordance with New Jersey law.  Colorado courts will honor the parties' contractual expectations regarding choice of law unless the law of the chosen state clearly contravenes a fundamental policy of this state.  **American Express Financial Advisors, Inc. v. Topel**, 38 F.Supp.2d 1233, 1239 (D. Colo. 1999); *see also* **Pirkey v. Hospital Corp. of America**, 483 F.Supp. 770, 772 (D. Colo. 1980) (citing **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 187).  That exception does not apply here.  It is true that "Colorado law embodies a strong public policy which disfavors covenants not to compete, protecting employees from non-competition clauses except in carefully defined circumstances." **King v. PA Consulting Group, Inc.**, 485 F.3d 577, 586 (10th Cir. 2007) (quoting **Nutting v. RAM Southwest, Inc.**, 106 F.Supp.2d 1121, 1124 (D. Colo. 2000) (citation and internal quotation marks omitted)).  Those exceptions are defined by §8-2-113(2), C.R.S.,[2] and include, *inter alia*, "[a]ny contract for the purchase and sale of a business or the assets

---

[1] I have already ordered that default judgment be entered against defendant Dyles as a sanction for discovery abuses.  (*See* **Order Adopting Recommendation of the United States Magistrate Judge** [#162], filed July 14, 2008.)

[2] Although this statute is included in Title 8, C.R.S.,which deals with labor and employment issues, it has been judicially extended beyond employment agreements.  *See* **Nutting**, 106 F.Supp.2d at 1124.

of a business," §8-2-113(2)(a), C.R.S., and "[a]ny contract for the protection of trade secrets," §8-2-113(2)(b), C.R.S.  Clearly, the PSA falls within the former exception, and the employment agreements come within the latter.  Moreover, the restrictions imposed by the non-compete provisions are reasonable in terms of duration and geographic scope.  *King*, 485 F.3d at 589 (citing *National Graphics Co. v. Dilley*, 681 P.2d 546, 547 (Colo. App. 1984)).  Colorado courts have upheld similar non-compete provisions. *See, e.g.*, *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1226, 1230 (Colo. App. 2002) (finding three-year non-compete agreement prohibiting defendants from engaging in manufacture of similar machines or software reasonable and enforceable); *Gold Messenger*, 937 P.2d at 910 (upholding three-year/fifty-mile non-compete covenant as reasonable and necessary to protect trade secrets).

Having determined that enforcing the covenants in this case would not violate a fundamental policy of this state, the next question is whether they are valid under the parties' chosen law.  Under New Jersey law, covenants not to compete are enforceable so long as they are reasonable under all the circumstances.  *Maw v. Advanced Clinical Communications, Inc.*, 846 A.2d 604, 608-09 (N.J. 2004) (citing *Solari Industries v. Malady*, 264 A.2d 53, 56 (N.J. 1970)).  A covenant is considered reasonable when it protects the employer's legitimate interest and imposes no undue hardship on the employee, and when enforcement would not impair the public interest. *Id*. at 609.  Clearly, plaintiff has legitimate interests in protecting its confidential customer information, *see Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1166 (N.J. 2001), an in maintaining the customer good will of the business it purchased, *see*

***Coskey's Television & Radio Sales & Service Inc. v. Foti***, 602 A.2d 789, 793 (N.J. Super. 1992).  There is no evidence that enforcing the covenants of either agreement will impose undue hardship on either defendant, and, indeed, both defendants have continued to work despite the entry of a preliminary injunction against them in this matter.  This latter point also demonstrates that the public interest will not be impaired by enforcing the subject covenants.

Because the covenants not to compete are enforceable, the issue becomes whether plaintiff has proven that defendants breached those contracts.  To make out its cause of action, plaintiff must prove that it had valid and binding contacts with defendants, that defendants breached their obligations under the contracts, and that plaintiff suffered damages as a result of those breaches.  ***National Utility Service, Inc. v. Chesapeake Corp.***, 45 F.Supp.2d 438, 448 (D.N.J. 1999).  Plaintiff has clearly established that both the PSA and the employment contracts were valid and binding.  Both defendants signed both the PSA and their respective employment agreements.  Mitchell received adequate consideration for the covenant not to compete contained in the PSA, both in the form of the purchase price and in the form of a guaranteed two-year employment contract.  Both defendants received employment and due compensation in 2006 in consideration of the non-compete covenants of their respective employment agreements.  Moreover, both defendants have acknowledged preparing tax returns for Kwik Tax within the restricted area.  Finally, the evidence establishes that the Aurora Qwik Tax office's gross and net revenues dropped sharply between 2006 and 2007, while the adjacent Kwik Tax office's revenues soared.  In failing to respond,

defendants have presented no genuine issue of material fact regarding any other potential causative factor, besides their change of allegiance, to explain this dramatic reversal in fortunes. I, therefore, find and conclude that plaintiff has established its breach of contract claims and is entitled to summary judgment.

Damages recoverable as a result of a breach of contract are those that were reasonably foreseeable as a probable result of the breach when the contract was made. ***Pickett v. Lloyd's***, 621 A.2d 445, 454 (N.J. 1993) ("Under contract law, a party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract."); ***see also Donovan v. Bachstadt***, 453 A.2d 160, 165 (N.J. 1982). Lost profits may be recovered in a breach of contract action so long as they can be established with a reasonable degree of certainty. ***RSB Laboratory Services, Inc. v. BSI Corp.***, 847 A.2d 599, 608 (N.J. Super 2004). "Past experience of an ongoing, successful business provides a reasonable basis for the computation of lost profits with a satisfactory degree of definiteness." ***Id.*** at 609 (citations and internal quotation marks omitted).

Plaintiff has provided two different calculations of its damages, one for past lost profits and lost investment value and a second for past and future lost profits. Plaintiff presents no argument or authority suggesting that I should adopt one metric over the other. However, I note that the non-compete provisions of the employment contracts would have expired within two years after defendants terminated their employment with plaintiff, and that the covenant of the PSA would have expired three years thereafter. For this reason, and in the absence of any evidence or argument to the contrary, I find

that plaintiff's calculation of future damages through the year 2013 is insupportable.

Moreover, although there is adequate evidentiary support for plaintiff's calculation of lost profits and investment value in 2007 and 2008, the figures it provides include an award of prejudgment interest. In a federal diversity case, the question of entitlement to prejudgment interest is one of state law. **See Jarvis v. Johnson**, 668 F.2d 740, 748 (3rd Cir. 1982). "[T]he rule in New Jersey is that, regardless of whether the contract claim is liquidated or not, equitable principles govern the award of prejudgment interest." **W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.**, 746 F.2d 215, 219 (3rd Cir. 1984); **see also Gleason v. Norwest Mortgage, Inc.**, 253 Fed.Appx. 198, 204 (3rd Cir. 2007). Plaintiff has presented no argument or authority suggesting that the equities favor an award of prejudgment interest in this case. **See W.A. Wright, Inc.**, 746 F.2d at 219 (upholding award of prejudgment interest where jury made specific finding that defendant terminated contracts without good cause). It, therefore, has waived its right to recover such amounts. Accordingly, I will require plaintiff to promptly file an amended affidavit setting forth the Aurora Qwik Tax office's past lost profits for 2007 and 2008, less prejudgment interest.

The PSA also included an indemnification agreement, pursuant to which Mitchell agreed "to indemnify and hold harmless [plaintiff] from and against any reasonable costs and expenses incurred by [plaintiff] as a result of any breach of this Agreement by . . . [Mitchell], and in enforcing and preserving [plaintiff's] rights under this Agreement, including, but not limited to, [plaintiff']s reasonable attorneys fees." (Plf. Motion App.,

8

Exh. E ¶ 14(a) at 6.)[3]  Although "New Jersey has a strong policy disfavoring shifting of attorneys' fees," **North Bergen Rex Transport, Inc. v. Trailer Leasing Co.**, 730 A.2d 843, 848 (N.J. 1999), New Jersey courts have upheld parties' rights to contractually agree otherwise, especially in relation to commercial contracts, such as those involving the sale of a business, *see **Dare v. Freefall Adventures, Inc.***, 793 A.2d 125, 135 (N.J. Super 2002).  Nevertheless, such provisions must still be strictly construed "in light of the general policy disfavoring the award of attorneys' fees." **North Bergen Rex Transport, Inc**., 730 A.2d at 848.

Plaintiff has submitted an expert affidavit and report in support of its request for attorney fees that are far and away the most cogent and thorough examples of their kind I have seen in some time.  (*See* **Declaration of Edwin P. Aro, Esq**. [#140], filed June 16, 2008.)  In addition, plaintiff has submitted unredacted copies of the underlying attorney billing records.  (*See* **Declaration of Kathy Matise**, Exhs. D-1, D-2, D-3, & D-4 [#143], filed June 16, 2008.)  Although on first pass, the total amount of attorney fees requested appears somewhat high, having reviewed the billing records and being familiar with the rather difficult course of this litigation, I agree with plaintiff's expert that the fees requested are reasonable and not excessive.  Plaintiff has done an admirable job of intelligently staffing this case and allocating responsibility among the various lawyers and paralegals involved, and there is no apparent unnecessary duplication of effort.  I therefore find and conclude that plaintiff is entitled to $348,962.50 in attorney

---

[3] Although the indemnification provision named Diarra as well, plaintiff apparently seeks indemnity only against Mitchell, perhaps because it is not shown that Diarra received any consideration for the PSA, although he was a signatory to that document.

fees as against Mitchell pursuant to the indemnification clause of the PSA.

The PSA also obligates Mitchell to reimburse plaintiff for other "costs and expenses." Plaintiff here requests $31,546.96 for expert witness services in this matter and $9,758.08 in other costs. Although "costs" is a term of art referring to only those costs recoverable pursuant to statute, *see* 28 U.S.C. § 1920; ***Crawford Fitting Co. v. J.T. Gibbons, Inc.***, 482 U.S. 437, 441-42, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987); ***Bee v. Greaves***, 910 F.2d 686, 690 (10th Cir. 1990), the term "expenses" is not so narrowly circumscribed. Moreover, the clause "costs and expenses" is modified by the phrase "including but not limited to attorneys' fees." Attorney fees are not a class of expenses typically recoverable from one's opponent in litigation. The fact that the PSA specifically provides otherwise leads me to conclude that the parties agreed that plaintiff would be entitled to costs and expenses that would not otherwise have been recoverable pursuant to statute. For these reasons, I find and conclude that plaintiff is entitled to recover its costs and expert witness fees from Mitchell under the terms of the PSA.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiff's Motion for Summary Judgment** [#139], filed June 16, 2008, is **GRANTED**;

2. That plaintiff is **AWARDED** its lost future profits and lost investment value for 2007 and 2008, without prejudgment interest, to be paid by defendants, Linda Mitchell and Hamidou Diarra;

3. That by no later than **Friday, August 1, 2008**, plaintiff **SHALL FILE** an

affidavit setting forth the revised damages figures consistent with this order;

    4.  That plaintiff is **AWARDED** $31,546.96 in expert witness fees and $9,758.08 in costs to be paid by defendant, Linda Mitchell, pursuant to the indemnification provisions of the PSA;

5.  That because the indemnification provision of the PSA fully compensates plaintiff for all costs, including both those recoverable and those not recoverable pursuant to federal law, plaintiff is not entitled to costs pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1;

    6.  That judgment **SHALL ENTER** for the plaintiff, Tax Services of America, Inc., against defendant, Linda Mitchell, on plaintiff's First and Second Causes of Action, alleging breach of the covenants not to compete of the PSA and Mitchell's 2006 employment agreement;

    7.  That judgment **SHALL ENTER** for the plaintiff, Tax Services of America, Inc., against defendant, Hamidou Diarra, on plaintiff's Third Cause of Action, alleging breach of the covenant not to compete of Diarra's 2006 employment agreement.

    8.  That judgment **SHALL ENTER** for the plaintiff, Tax Services of America, Inc., against defendant, Linda Mitchell, as to plaintiff's Eighth Cause of Action, seeking indemnification under the terms of the PSA;

    9.  That judgment **SHALL ENTER** for the plaintiff, Tax Services of America, Inc., against defendant, Kerry Dyles, pursuant to my **Order Overruling Objections to and Adopting Recommendation of the United States Magistrate Judge** [#161], entered July 14, 2008, pursuant to which plaintiff is **AWARDED** $8,382.50 to be paid by

defendant, Kerry Dyles;

10. That judgment **SHALL ENTER** for the plaintiff, Tax Services of America, Inc., against defendant, Hamidou Diarra, pursuant to my **Order Adopting Recommendation of the United States Magistrate Judge** [#160], filed July 14, 2008, pursuant to which plaintiff is **AWARDED** $4,945.00 to be paid by defendant, Hamidou Diarra;

11. That default judgment **SHALL ENTER** pursuant to my **Order Adopting Recommendation of the United States Magistrate Judge** [#162], filed July 14, 2008, for the plaintiff, Tax Services of America, Inc., against defendant, Kerry Dyles; and

12. That the Trial Preparation Conference scheduled for **Wednesday, September 3, 2008**, at **11:00 a.m.**, and the trial scheduled to commence on **Monday, September 15, 2008**, are **VACATED**.

Dated July 21, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**