IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00249-REB-KLM

TAX SERVICES OF AMERICA, INC.,

    Plaintiff,

v.

LINDA MITCHELL,
HAMIDOU DIARRA, and
KERRY DYLES,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiff's Motion for Entry of Judgment against Defendant Kerry Dyles** [Docket No. 167; Filed July 28, 2009]. The Motion was referred to this Court for recommendation on October 6, 2008 [Docket No. 175]. Defendant Dyles filed a Response in opposition to the Motion on August 18, 2008 [Docket No. 169], and filed a Supplemental Response on August 20, 2008 [Docket No. 170-2]. Plaintiff filed a Reply on September 9, 2008 [Docket No. 174]. The Motion has been fully briefed and is ripe for resolution. Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1(C), the Court recommends that the Motion be **GRANTED**.

### I. Background

Plaintiff asserts breach of contract, tortious interference, and misappropriation claims against Defendants in connection with Defendants Mitchell and Diarra's execution of a Purchase and Sale Agreement ("PSA") for the sale of their tax business to Plaintiff and their

promise not to compete with Plaintiff for a set duration, and within a set geographical area, thereafter. *Complaint* [#1] at 1-2. Defendants Mitchell and Diarra also executed employment contracts to work for Plaintiff and agreed not to provide similar tax assistance to any competitor for a set duration, and within a set geographical area, during or after their employment. *Order* [#164] at 2-3. While the noncompete provisions of the contracts were in effect, Defendants Mitchell and Diarra provided tax assistance to Defendant Dyles, who owned a business in competition with Plaintiff within the prohibited geographic area. *Id.* at 3.

On May 21, 2008, the Court recommended that default judgment be entered against Defendant Dyles for his longstanding and dilatory discovery abuses and disrespect for the Court. *Recommendation* [#130] at 1. Specifically, I found that Defendant Dyles unreasonably neglected his discovery responsibilities and failed to comply with five Court Orders related to discovery. *Id.* at 2-5. The Recommendation was approved and adopted by District Judge Robert E. Blackburn on July 14, 2008 [Docket No. 162], and default judgment entered against Defendant Dyles. However, no specific amount of damages was assessed against Defendant Dyles at that time as the amount of Plaintiff's damages had yet to be determined.

On July 21, 2008, Judge Blackburn granted summary judgment in favor of Plaintiff and assessed damages, in part, for the injuries at issue in the case. *Order* [#164] at 10-12. Although Judge Blackburn determined the amount of the majority of the damages to which Plaintiff was entitled, he directed Plaintiff to submit a revised affidavit of damages setting forth its lost profits and lost investment value for 2007 and 2008 and excluding prejudgment interest. *Id.* at 8, 10-11. Plaintiff did so [Docket Nos. 165 & 166] and has since filed

motions asking Judge Blackburn to accept the revised affidavit of damages and enter judgment in Plaintiff's favor in the amount of $609,215.54 (Mitchell) and $25,290 (Diarra), plus postjudgment interest [Docket No. 176 & 177]. These motions have not been ruled upon and, to date, Judge Blackburn has not accepted or rejected the revised damages calculation set forth in Plaintiff's revised affidavit. I have reviewed Judge Blackburn's Order and Plaintiff's revised affidavit and find that the revised affidavit conforms with Judge Blackburn's directions. *See Revised Affidavit of Lisa A. Meer* [#166] at 2-3. For the purposes of this Recommendation, I will assume that the damages amount set forth in Plaintiff's revised affidavit will be adopted. However, because the issue of whether the revised affidavit should be adopted is not before me, my assumption should not be treated as binding.

Accordingly, as set forth in the revised affidavit, Plaintiff is entitled to a judgment of its lost profits and lost investment value in the amount of $239,293.00. *Id.* at 3. In addition, as set forth in Judge Blackburn's Order on the motion for summary judgment, Plaintiff is entitled to $348,962.50 in attorneys' fees, $31,546.96 in expert witness fees, and $9,758.08 in other costs. *Order* [#164] at 9-10. The issue presented by the present Motion is whether and to what extent Defendant Dyles should be held individually liable for Plaintiff's damages, fees and costs as a result of entry of default judgment against him.

## II. Analysis

Pursuant to Plaintiff's complaint, Plaintiff asserts four claims for relief relevant to Defendant Dyles: (1) misappropriation of trade secrets (Mitchell, Diarra, and Dyles); (2) tortious interference with existing and prospective business relationships (Mitchell, Diarra, and Dyles); (3) tortious interference with existing contractual relationships (Dyles); and (4)

civil conspiracy (Mitchell, Diarra, and Dyles).  *Complaint* [#1] at 12-17.  Plaintiff contends that as a result of the default judgment entered against Defendant Dyles and Judge Blackburn's Order granting summary judgment in favor of Plaintiff, judgment should be entered against Defendant Dyles in the amount of the total damages assessed.  *Motion* [#167] at 2-5.

Defendant Dyles contends that despite the fact that default judgment was entered against him, he is entitled to a hearing and an opportunity to refute the damage calculations adopted by Judge Blackburn in his Order on the motion for summary judgment and set forth in the revised affidavit.  *Supplemental Response* [#170-2] at 2.  He also contends that an award of attorneys' fees against him is not appropriate.  *Id.* at 8.  Although adoption of Plaintiff's damages calculation was held in abeyance until Plaintiff presented evidence of lost profits and lost investment value in 2007 and 2008 and excluded prejudgment interest, Judge Blackburn did not take issue with the calculation of the damages that Defendant Dyles seeks to refute here, i.e., Plaintiff's damages for lost profits and lost investment value set forth in the original affidavit.  Indeed, Judge Blackburn held that "there is adequate evidentiary support for plaintiff's calculation of lost profits and investment value in 2007 and 2008."  *Order* [#164] at 8.  Therefore, as noted above, for purposes of this Recommendation, I will assume that Judge Blackburn will adopt the revised amount of damages set forth in Plaintiff's revised affidavit.

    **A.**    **Hearing on Damages**

Defendant Dyles contends that the entry of default judgment against him determined his liability for Plaintiff's injuries, but did not determine the amount of damages he is obligated to pay.  As such, Defendant Dyles argues that he should be given an opportunity

4

to refute the reasonableness of Plaintiff's damages calculation before they may be assessed against him.[1]  See Fed. R. Civ. P. 55(b)(2) (directing that "[t]he court may conduct hearings . . . when, to enter or effect judgment, it needs to . . . determine the amount of damages").  In support of his position, Defendant Dyles cites two cases which held that the defaulted party was entitled to a hearing on damages.  *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) (holding that "a court may not enter a default judgment without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation"); *Eisler v. Stritzler*, 535 F.2d 148, 153 (1st Cir. 1976) (holding that where "plaintiffs' claims were not for unliquidated damages, and defendant had made an appearance, a hearing, although not a jury trial, was required." (citation omitted)).  However, I find that *Eisler*, a First Circuit case, is not binding on this Court, and that *Venable* does not mandate a hearing in the circumstances at issue here.

In the present case, the amount of Plaintiff's damages has been judicially adjudicated by Judge Blackburn in conjunction with his Order on the motion for summary judgment.  In fact, he noted that upon review of the evidence of such damages, "there is adequate evidentiary support for plaintiff's calculation of lost profits and investment value in 2007 and 2008."  *Order* [#164] at 8.  This statement indicates that Judge Blackburn determined that Plaintiff's damages were "capable of mathematical calculation."  Further,

---

[1] Defendant Dyles does not appear to take issue with the imposition of damages against him on the basis of his liability, but rather argues that the amount of damages is incorrect.  In any event, I note that lost profits and lost investment value are an appropriate measure of damages for claims of tortious interference and misappropriation.  *See, e.g.*, *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1120 (Colo. 1990); *Mineral Deposits Ltd. v. Zigan*, 773 P.2d 606, 608 (Colo. Ct. App. 1988).  Because it is clear that damages may be awarded against Defendant Dyles on these claims, it is not necessary to address Plaintiff's conspiracy claim against Defendant Dyles.

*Venable* and *Eisler* are distinguishable because the amount of damages at issue in both cases was assessed on the preliminary pleadings, rather than through briefing on a motion for summary judgment. *See Venable*, 721 F.2d at 300 (reversing default judgment where "nothing in the record support[ed] . . . these damage figures"); *Eisler*, 535 F.2d at 153-54 (noting that it was error to assess amount of damages based solely on the allegations contained in the complaint). Moreover, as apparently was the case here, where "[t]he court finds the affidavits and documents presented sufficiently detailed to determine the appropriate amount of damages," a hearing is not required or necessary. *Wenaha Music Co. v. J & K Invs., Inc.*, No. 86-4374, 1987 U.S. Dist. LEXIS 8612, at *6 (D. Kan. Sept. 9, 1987) (unpublished decision).

Further, Plaintiff argues, and I agree, that Defendant Dyles' predicament is caused by his longstanding dilatory discovery conduct. Allowing Defendant Dyles to attack the calculations derived by Plaintiff's expert at this point, after he neglected his discovery responsibilities, would negate the adverse consequences of his discovery misconduct. *See James v. Frame*, 6 F.3d 307, 309-11 (5th Cir. 1993) (affirming damages assessed on default judgment due to party's "persistent practice of delaying tactics and other discovery abuses" and recognizing that ample evidence existed to support such assessment without a hearing).

Finally, nothing in Fed. R. Civ. P. 55 regarding entry of a default judgment requires that the Court conduct a hearing. "The rule explicitly grants the district court wide latitude" to determine whether a hearing is necessary. *Id.* at 310. On the summary judgment pleadings, Judge Blackburn found that there was sufficient evidentiary support to calculate damages without a hearing. *Order* [#164] at 8. In these circumstances, a hearing is not

required.

B.   **Attorneys' Fees**

Defendant Dyles also contends that the award of attorneys' fees imposed by Judge Blackburn should not be levied against him.  Judge Blackburn determined that an award of attorneys' fees was authorized by the terms of the PSA between Defendants Mitchell and Diarra and Plaintiff.[2]   The PSA specified that its terms were to be construed in accordance with New Jersey law, and Judge Blackburn determined that the choice of law provision should be honored.  *Id.* at 4.  Here, Defendant Dyles contends that Colorado law is applicable to determine his liability for Plaintiff's attorneys' fees, but in any event, he argues that "neither Colorado nor New Jersey permit recovery of attorneys fees in these circumstances."  *Supplemental Response* [#170-2] at 7.  Plaintiff concedes that its claims against Defendant Dyles are governed by Colorado law.  *Reply* [#174] at 8 n.5.  The issue of whether Defendant Dyles should be held responsible for attorneys' fees depends upon his liability for claims brought pursuant to Colorado common law.  Accordingly, I apply Colorado law to determine his liability for fees. *See BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999).

Defendant Dyles argues that responsibility for Plaintiff's attorneys' fees cannot be premised on his mere liability for tortious interference or misappropriation of trade secrets.[3]

---

[2] Defendant Dyles does not appear to challenge or take issue with the amount of attorneys' fees determined by Judge Blackburn, but rather, argues that this amount should not be assessed against him.  In addition, I note that Defendant Dyles does not dispute the amount or application to him of Plaintiff's costs and expert fees.

[3] To the extent that Defendant Dyles contends that he is not liable for the claims asserted against him in Plaintiff's complaint, he is barred from litigating this issue by virtue of the imposition of default judgment against him.  *See Order* [#162] at 2.

With respect to attorneys' fees, Colorado imposes a "general rule, [that] in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by the prevailing party in either a contract or tort action." *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo. 1996). This reasoning follows "the American Rule, which requires each party in a lawsuit to bear its own legal expenses." *Id.*; *Morris v. Belfor USA Group, Inc.*, No. 08-CA-0056, 2008 WL 5352285, at *5 (Colo. Ct. App. Dec. 24, 2008) (unpublished decision). As to Plaintiff's tortious interference claims, neither party has directed the Court to contractual or statutory authority to justify an award of attorneys' fees, therefore, the imposition of fees must be based upon case precedent. As to Plaintiff's misappropriation of trade secrets claim, statutory authority provides for an award of attorneys' fees, but only where the misappropriation was found to be willful and wanton. Colo. Rev. Stat. § 7-74-105. Because awarding attorneys' fees is a derogation of the American Rule, the statute or court ruling used to support such an award must be strictly applied. *Sotelo v. Hutchens Trucking Co.*, 166 P.3d 285, 287 (Colo. Ct. App. 2007).

    **1.  Tortious Interference**

 Plaintiff argues that Defendant Dyles is responsible for its attorneys' fees to remedy the conduct which gave rise to the tortious interference claim. "When the natural and probable consequence of a wrongful act has been to involve plaintiff in litigation with others, the general rule is that the reasonable expenses of the litigation may be recovered from the wrongdoer." *Alexander Co. v. Packard*, 754 P.2d 780, 782 (Colo. Ct. App. 1988) (citation omitted). Specifically, Plaintiff argues that attorneys' fees are a consequential damage of Defendant Dyles' tortious conduct and are therefore permitted. *See Westfield*, 786 P.2d at 1120. In *Westfield*, the Colorado Supreme Court held that:

> One who is liable to another for interference with . . . a prospective contractual relation is liable for damages for (a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

*Id.* (quoting Restatement (Second) of Torts § 774A(1) (1990)). Plaintiff asserts that attorneys' fees fall into the category of "consequential losses," although the Colorado Supreme Court did not explicitly address the issue.

Defendant Dyles urges me to reject application of *Westfield* because the propriety of imposition of attorneys' fees was not at issue there. *Supplemental Response* [#170-2] at 9. While attorneys' fees were imposed, the question of whether attorneys' fees were appropriate was not addressed. Defendant Dyles argues that "[o]ne simply cannot extrapolate a full reversal of venerable Colorado law on attorneys fees based upon the *dicta* in *Westfield.*" *Id.* I agree. In order to fall within an exception set forth in the American Rule, Plaintiff must show that imposition of attorneys' fees in this instance is authorized by Colorado law. In *Westfield*, the Colorado Supreme Court was not asked to address the propriety of the imposition of attorneys' fees, and I am not convinced that the mention of an award of attorneys' fees in *dicta* creates binding precedent. As such, I find that *Westfield* is insufficient to overcome the general rule that attorneys' fees are not recoverable in a tort action.

Plaintiff has cited no additional Colorado court ruling to support its position. While "Colorado does allow the recovery of attorneys' fees as general damages where the incursion of such fees naturally flows from the commission of the tort involved," Plaintiff has pointed to no Colorado case which explicitly holds that the attorneys' fees incurred to

9

prosecute allegations of tortious interference are properly recoverable. *See generally Signer v. Pimkova*, No. 05-cv-02039-REB-MJW, 2007 WL 4442327, at *7 (D. Colo. Dec. 14, 2007) (unpublished decision). Accordingly, I find that attorneys' fees are not recoverable against Defendant Dyles pursuant to Plaintiff's tortious interference claims.

### 2. Misappropriation of Trade Secrets

Plaintiff also seeks an award of attorneys' fees for Defendant Dyles' misappropriation of trade secrets. Defendant Dyles argues that pursuant to Colo. Rev. Stat. § 7-74-105, attorneys' fees cannot be imposed upon him unless his tortious conduct was also found to be willful and wanton. *Supplemental Response* [#170-2] at 10. Specifically, Defendant Dyles contends that where default judgment is entered, willful conduct can only be demonstrated where the wrongdoer continues the tortious behavior after notice of its illegality and promising to stop. *See Playboy Enters. Int'l v. Muller*, 314 F. Supp. 2d 1037, 1043-44 (N.D. Nev. 2004). Here, he contends that upon notice, he "promised to stop the alleged misappropriation of Plaintiff's trade secrets." *Supplemental Response* [#170-2] at 8. He also did not object to the imposition of a temporary restraining order, and stipulated to a preliminary injunction. He maintains that since that time, he has not re-engaged in the behavior that led to this lawsuit. *Id.*

Plaintiff argues that the entry of default judgment against Defendant Dyles establishes that his conduct was willful and wanton. *Motion* [#167] at 4. The general rule is that upon entry of default, the factual allegations of the complaint, except those related to the amount of damages, are taken as true. *Deery Am. Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished decision) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d

10

1319, 1323 (7th Cir. 1983)). Consequently, "[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1119 n.3, 1125 (10th Cir. 2003) (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (citation omitted)). Because a default judgment precludes an adjudication of defendant's liability on the merits, I need not consider evidence Defendant Dyles seeks to introduce in an effort to refute liability. *Id.* at 1125.

Here, Plaintiff's complaint contained an allegation that Defendant Dyles' conduct was willful and wanton. *Motion* [#1] at 13. While Defendant Dyles seeks to present evidence and argument to the contrary, the default judgment entered against him judicially established the allegations set forth in the complaint. *Olcott*, 327 F.3d at 1125 & n.11 ("As such, it is a merits argument foreclosed by the district court's default judgment. . . . After entry of default judgment, a defendant cannot defend a claim on the merits.") (citing *Jackson*, 327 F.3d at 524; *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990)). In fact, Judge Blackburn ordered "[t]hat default judgment as to liability SHALL ENTER on behalf of [Plaintiff], and against [Defendant Dyles], as to all claims and causes of action asserted herein against him as a sanction for his dilatory conduct in discovery and failure to comply with court discovery orders." *Order* [#162] at 2. This is the penalty that Defendant Dyles must pay for his discovery misconduct. He was given ample warning that his continued conduct would lead to entry of default judgment, and he did not correct his behavior. Therefore, the allegation that Defendant Dyles' conduct was willful and wanton is held to be established.

Although Defendant Dyles' conduct is deemed to be willful and wanton for purposes

of applying section 7-74-105, I note that an award pursuant to this section is left to my discretion. Colo. Rev. Stat. § 7-74-105 ("If . . . willful and malicious misappropriation exists, the court *may* award reasonable attorney fees to the prevailing party." (emphasis added)). The statute requires a two-fold finding prior to the imposition of attorneys' fees. First, the party seeking the fees must be the prevailing party. Second, the fees sought must be reasonable. Here, by virtue of default judgment entered against Defendant Dyles and summary judgment entered in Plaintiff's favor, Plaintiff is clearly the prevailing party. Moreover, Judge Blackburn has already determined that the attorneys' fees set forth by Plaintiff, while "somewhat high, . . . are reasonable and not excessive." *Order* [#164] at 9. Judge Blackburn also noted that the affidavit and report submitted in support of Plaintiff's request for fees were "far and away the most cogent and thorough examples of their kind I have seen in some time." *Id.*

My research as to the application of section 7-74-105 reveals a relative dearth of discussion as to when, in the Court's discretion, an award of attorneys' fees should be denied. However, when determining whether an award of attorneys' fees is justified pursuant to an analogous federal statute, it has been noted that the prevailing party should ordinarily recover its fees, unless circumstances would make an award of fees unjust. *See Phelps v. Hamilton*, 120 F.3d 1126, 1129-30 (10th Cir. 1997) (citing 42 U.S.C. § 1988) (citations omitted). Although Defendant Dyles invites me to consider evidence that he changed his conduct upon notice and that he did not oppose preliminary injunctive relief, the Court need not delve into the merits of such arguments upon finding that an award of attorneys' fees is warranted. *See generally Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 609-10 (2001) (noting that the decision of

12

whether to award attorneys' fees should not necessitate major litigation).

Consequently, I find that an award of attorneys' fees would not be unjust. First, the well-pled allegations of the complaint assert that Dyles knowingly employed the services of Defendants Mitchell and Diarra to compete directly with Plaintiff through the use of Plaintiff's trade secrets. *Complaint* [#1] at 9, 13. Second, I am particularly unsympathetic to Defendant Dyles' plight here given that a significant amount of attorneys' fees were accumulated because of his own tortious behavior and discovery misconduct. Accordingly, I find that attorneys' fees are recoverable against Defendant Dyles pursuant to Plaintiff's misappropriation of trade secrets claim.

### III. Conclusion

For the aforementioned reasons, I respectfully **RECOMMEND** that **Plaintiff's Motion for Entry of Judgment Against Defendant Kerry Dyles** [#167] be **GRANTED** in an amount to be determined by the District Court, including lost profits and lost investment value, $348,962.50 in attorneys' fees, $31,546.96 in expert witness fees, and $9,758.08 in costs.[4]

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

---

[4] Although Plaintiff seeks judgment in the amount of $637,943.04, see *Motion* [#167] at 5, the source of this figure is unclear. The sum of the 2007 and 2008 lost profits and lost investment value ($239,293.00), attorneys' fees, expert fees, and costs is $629,560.54.

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: January 13, 2009

                                  BY THE COURT:

                                  s/ Kristen L. Mix
                                  U.S. Magistrate Judge
                                  Kristen L. Mix